# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

ROBERT T.[1],

Plaintiff,

     v.                                          6:20-CV-1121
                                                        (ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

WILLIAM H. BRENNAN, ESQ., for Plaintiff
LOUIS J. GEORGE, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636©, Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on August 15, 2016, alleging disability beginning April 6, 2016.  (Administrative Transcript ("T") at 107–08, 247–57).  His application was denied initially on November 4, 2016. (T. 107–08, 140–45).  At the

---

[1]In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

request of the plaintiff, Administrative Law Judge ("ALJ") Robyn Hoffman conducted a hearing on August 15, 2018, at which plaintiff gave testimony and amended his alleged onset date to November 17, 2015. (T. 59–101).  The ALJ conducted a supplemental hearing on April 5, 2019, at which she took testimony from vocational expert ("VE") Michele Erbacher.  (T. 38–57).

In a decision dated April 23, 2019, the ALJ found that plaintiff was not disabled. (T. 7–32).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on July 16, 2020. (T. 1-6).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections
404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities.  If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of
> the regulations.  If the claimant has such an impairment, the
> [Commissioner ] will consider him disabled without considering
> vocational factors such as age, education, and work experience . . . .
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work.  Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,
416.920.  The plaintiff has the burden of establishing disability at the first four steps.
However, if the plaintiff establishes that her impairment prevents her from performing
her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine
whether the correct legal standards were applied and whether substantial evidence
supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.
Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).
Substantial evidence is "such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  **FACTS**

Plaintiff was 47 years old on the date of the administrative hearing.  (T. 68).  As a child, plaintiff was diagnosed with a learning disability, and received special education services.  (T. 68–69).  He "quit" school in the tenth grade.  (T. 70).  Plaintiff presently

4

lived with his sister in an apartment, and had three children who did not live with him. (T. 78). He did not have a driver's license. (T. 84). For fifteen years, plaintiff had been employed full-time as a "burner" in a steel factory. (T. 71–72, 85). In 2015 plaintiff was "laid off" because his performance was suffering, and because he had "too many doctor's appointments." (T. 73, 86). He collected unemployment benefits for some time after. (T. 87). He tried to find another job with the assistance of a career center, but was unsuccessful. (T. 87). Plaintiff attributed some of this difficulty to his criminal history. (T. 87–88).

Plaintiff testified that he could no longer work because of his balance issues. (T. 74). He fell at least once a week. (T. 75). Although plaintiff was prescribed a cane for walking, he did not bring one to the administrative hearing because his was broken, and his physician was ordering a new one. (T. 67–68). Plaintiff also had trouble breathing, and was short of breath every day. (T. 76). He carried an inhaler. (T. 76–77). In addition, he experienced tingling in his toes from nerve issues. (T. 77). His arthritis caused his lower extremities to "cramp up." (T. 78).

Plaintiff testified that he could read and write to a limited extent, but had a hard time filling out and comprehending forms. (T. 70–71). He struggled with memory and attention deficits. (T. 82–83). He also testified that he felt "funny" being around a lot of people. (T. 81). Plaintiff saw his seven-year-old son every day. (T. 84). They sometimes walked to the park. (T. 97). His sister helped out with the laundry and cooking. (T. 78). Some days he went for a walk, using his cane. (T. 79). He visited with friends, and his mother, and enjoyed watching sports and the news on television.

(T. 79, 94–95).  As of the date of the administrative hearing, he had quit smoking for about a month.  (T. 80).

## IV.    **THE ALJ'S DECISION**

The ALJ first found that plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of November 17, 2015.  (T. 13).  Next, at step two, the ALJ found that plaintiff had the following severe impairments: chronic obstructive pulmonary disease ("COPD"), a learning disorder, alcohol use disorder, depressive disorder, degenerative disc disease of the lumbar spine, and ataxia.  (*Id.*).  At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 13–14).

At step four, the ALJ found that plaintiff had the following residual functional capacity:

> The claimant can occasionally lift and carry ten pounds, sit for approximately six hours, and stand or walk for approximately two hours in [an] eight-hour day with normal breaks; he should avoid exposure to excessive amounts of respiratory irritants such as dust, odors, fumes, and gases and extreme hot and cold temperatures; he requires the use of a cane to ambulate, but retains the ability to carry small objects with his free hand; the claimant retains the ability to understand and follow simple instructions and directions, perform simple tasks independently, maintain attention/concentration for simple tasks, regularly attend to a routine, and maintain a schedule; he can relate to and interact appropriately with all others to the extent necessary to carry out simple tasks; and he can handle simple, repetitive work-related stress, in that he can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require him to supervise or manage the work

6

of others.

(T. 17).

Next, the ALJ found that plaintiff was unable to perform any past relevant work. (T. 25).  However, at step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (T. 25–27).  Thus, the ALJ found that plaintiff was not disabled. (T. 27).

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of his position that the ALJ's decision is not supported by substantial evidence:

1.   The ALJ failed to fully develop the record with respect to plaintiff's school records. (Plaintiff's Brief ("Pl.'s Br.") at 13–15) (Dkt. No. 17).

2.   The ALJ failed to correctly apply the treating physician rule, and otherwise improperly evaluated the medical evidence of record.  (Pl.'s Br. at 15–19).

Defendant argues that the ALJ properly considered the evidence of record, and that the Commissioner's decision is otherwise supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 4–22) (Dkt. No. 20). For the following reasons, this court concludes that the ALJ's physical RFC determination was not supported by substantial evidence. Accordingly, remand is warranted for further administrative proceedings to properly develop and assess the medical evidence in connection with the Commissioner's RFC analysis and determination of plaintiff's ultimate ability to

perform other work.

## DISCUSSION

## VI.    RFC/WEIGHING EVIDENCE/DUTY TO DEVELOP THE RECORD

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations.
Ordinarily, RFC is the individual's maximum remaining ability to do sustained work
activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular
and continuing basis" means eight hours a day, for five days a week, or an equivalent
work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2
(N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)
(quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-
00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v.
Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F.
Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical
facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's
subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R.
§§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)
(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v.
Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019);
*Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions

plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.   Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the

9

evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

### 3.    Duty to Develop the Record

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, regardless of whether the claimant is represented by counsel, to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512 (d), 416.912(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."). When a claimant is pro se, however, "the ALJ is under a heightened duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Estrada v. Comm'r of Soc. Sec.*, No. 13-CV-04278, 2014 WL 3819080, at *3 (S.D.N.Y. June 25, 2014) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990)); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits."). "This entails a heightened obligation to ensure both the completeness and the fairness of the administrative hearing." *Id.* (citing *Cullinane v. Sec. of Dep't of Health and Human Services of U.S.*, 728 F.2d 137, 137 (2d Cir. 1984)(describing an ALJ's "affirmative duty to ensure that pro se disability insurance benefit claimants receive full and fair hearings")).  Moreover, "[t]he ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment." *Tammy H. v. Comm'r of Soc. Sec.*, No. 5:18-CV-851(ATB), 2019 WL 4142639, at *10 (N.D.N.Y. Aug. 30, 2019) (quoting *Champion v. Berryhill,* No. 16-CV-4723, 2017 WL 4404473, at *16 (S.D.N.Y. Sept.

11

14, 2017) (other citations omitted)).

In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability, and additional information is needed to reach a determination.  20 C.F.R. §§ 404.1512(e), 416.912(e).[2]  Although the ALJ must attempt to fill in any clear gaps in the administrative record, "where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records." *Jaeger-Feathers v. Berryhill*, No. 1:17-CV-06350, 2019 WL 666949, at *3 (W.D.N.Y. Feb. 19, 2019) (quoting *Johnson v. Comm'r of Soc. Sec.*, No. 1:17-CV-06350, 2018 WL 1428251, at *5 (W.D.N.Y. Mar. 22, 2018)).

## B.   Application

Plaintiff's most persuasive argument contends that the ALJ's failure to further develop the record, despite attributing "little" weight to nurse practitioner ("NP") Marrello and Dr. Taylor's opinion, resulted in an RFC that was not supported by substantial evidence.  As discussed below, the court agrees that the ALJ's deficient evaluation of the medical evidence concerning plaintiff's physical limitations suggests that she improperly substituted her own lay opinion for those of medical experts,

---

[2] Effective March 26, 2012, the Commissioner amended these regulations to remove former paragraph (e) and the duty it imposed on ALJs to re-contact a disability claimant's treating physician under certain circumstances. The current regulations apply to plaintiff's case. *See Jimenez v. Astrue*, No. 12 Civ. 3477, 2013 WL 4400533, at *11 (S.D.N.Y. Aug. 14, 2013) (noting that even though the regulations were amended to remove the provision requiring the ALJ to recontact a treating physician to resolve an ambiguity in the record, the regulations still "contemplate the ALJ recontacting the treating physicians when 'the additional information needed is directly related to that source's medical opinion'").

resulting in an RFC determination that was not supported by substantial evidence.

In her written decision, the ALJ specifically evaluated the March 25, 2018 opinion rendered by plaintiff's treatment provider, NP Patricia Marrello, and cosigned on May 9, 2018 by Vivienne Taylor, M.D. (T. 660). In their one paragraph, joint letter opinion, these providers stated that plaintiff was "unable to work due to severe chronic lung disease." (T. 660). They also attributed his inability to work to his syncopal episodes and arthritis. (*Id.*).

Upon evaluation, the ALJ afforded the treating providers' opinion "little weight." (T. 23). Although she did not explicitly reference the treating physician rule, the ALJ's evaluation implicitly discussed several of the *Burgess* factors as is required when declining to give a treating source's opinion controlling weight. For example, the ALJ noted that while NP Marrello had a history of primary care treatment with plaintiff, there was nothing in the record to indicate that plaintiff had ever been examined by Dr. Taylor. (T. 23). *See* 20 C.F.R. §§ 404.1527(c)(1)-(2); 416.927(c)(1)-(2) (Examining and Treatment Relationship). The ALJ also stated that NP Marrello's longitudinal records did not support the provider's "disabling assessment" of the plaintiff. (*Id.*). The ALJ cited to primary care records indicating that plaintiff's chronic obstructive pulmonary disease had been fairly stable with medication, as well as her numerous physical examinations that were "essentially within normal limits." (T. 24) *See* 20 C.F.R. §§ 404.1527(c)(3); 416.927(c)(3) (Supportability). In addition, the ALJ noted that the treating providers' opinion was contrary to the opinion of consultative examiner, Dr. Cole. *See* 20 C.F.R. §§ 404.1527(c)(4); 416.927(c)(4) (Consistency).

The ALJ considered other factors in reaching the determination to attribute less-than-controlling weight to NP Marrello and Dr. Taylor's opinion, including the absence of any function-by-function assessment of plaintiff's ability to perform work-related activities, and the fact that the issue of disability is a determination reserved to the Commissioner.  (T. 24).

Other than NP Marrello and Dr. Taylor's assessment, the only other medical opinion of record[3] concerning plaintiff's physical limitations was that of consultative examiner Brian Cole, M.D.  (T. 571).  At his October 25, 2016 examination, Dr. Cole observed, among other things, that plaintiff had a normal gait and stance, used no assistive devices,[4] and needed no help changing or getting on and off the examination table.  (T. 572).  Plaintiff exhibited full range of motion upon musculoskeletal examination, and full strength in his upper and lower extremities.  (T. 573).  Plaintiff's pulmonary function test indicated moderate obstruction.  (*Id.*).  Dr. Cole indicated that plaintiff's prognosis was "poor."  (T. 573).  In his medical source statement, he opined

---

[3]The record also includes an RFC assessment prepared at the administrative level by Single Decision Maker ("SDM") S. Grebert.  (T. 116–118).  "ALJs have been instructed by the Social Security Administration that the opinions of [Single Decision Maker]s 'should not be afforded any evidentiary weight at the administrative hearing level,' which has led numerous courts to conclude that assigning any evidentiary weight to a [Single Decision Maker]'s opinion is an error." *Robles v. Comm'r of Soc. Sec.*, No. 15-CV-1359 (GTS), 2016 WL 7048709, at *6 (N.D.N.Y., Dec. 5, 2016) (quoting *Martin v. Astrue*, No. 10-CV-1113 (TJM), 2012 WL 4107818, at *15 (N.D.N.Y., Sept. 19, 2012)); *see also Box v. Colvin*, 3 F. Supp. 3d 27, 46 (E.D.N.Y. 2014) ("Because 'a single decision maker [ ] is not a medical professional[,] [ ] courts have found that an RFC assessment from such an individual is entitled to no weight as a medical opinion.' ") (quoting *Sears v. Astrue*, No. 11-CV-0138, 2012 WL 1758843, at *6 (D. Vt. May 15, 2012)).  It was, therefore, proper for the ALJ to omit an evaluation of SDM Grebert's RFC assessment for light work from her assessment of the medical evidence of record.

[4]The evidence reflects that approximately one year after Dr. Cole's consultative examination, plaintiff's treating neurologist recommended that he use a cane for walking.  (T. 593).

14

that plaintiff should avoid smoke, dust or other known respiratory irritants because of the poor pulmonary function test.  (*Id.*).  He also restricted plaintiff from activities requiring fine visual acuity, because plaintiff's uncorrected vision in his right eye was 20/70.  (*Id.*).

The ALJ considered Dr. Cole's opinion and afforded it "some weight."  (T. 23). While she found support for plaintiff's environmental limitations, she rejected Dr. Cole's determination limiting plaintiff to activities requiring fine visual acuity, to the extent plaintiff's uncorrected visual acuity was 20/40 in both eyes.  (*Id.*).  In her discussion of Dr. Cole's opinion, the ALJ further stated that the consultative examiner "did not place any exertional limitations on the [plaintiff], which would certainly support an ability on the part of the [plaintiff] to perform at least sedentary work."  (T. 23).

The Second Circuit has made clear that where "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required[.]" *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations omitted). However, under such circumstances an "RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.' " *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 293 (W.D.N.Y. 2018) (quoting *Muhammad v. Colvin*, No. 6:16-CV-06369, 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017)); *see also Martin v. Comm'r of Soc. Sec.*, No. 6:18-CV-06365, 2020 WL 1322572, at *5 (W.D.N.Y. Mar. 20, 2020)

(acknowledging the *Monroe* decision, but nevertheless ordering remand because the record was "devoid of any assessment of plaintiff's exertional limitations," and contained no "useful discussion of such limitations.").

In this case, the record lacks a useful assessment of plaintiff's limitations, particularly with respect to his ability to fulfill the exertional requirements of sedentary work. Specifically, there is no medical evidence that discusses plaintiff's ability to sit, stand, walk, lift or carry during the course of an eight-hour workday. Despite the ALJ's conclusion to the contrary, Dr. Cole's failure to discuss plaintiff's limitations in these functional abilities, or lack thereof, does not constitute substantial evidence that plaintiff could perform them to the extent necessary to perform sedentary work. *See Frank v. Comm'r of Soc. Sec.*, No. 5:17-CV-103, 2019 WL 430887, at *7 (D. Vt. Feb. 4, 2019) ("[T]he absence of evidence indicating that plaintiff can [perform a relevant functional ability] does not constitute substantial support for the ALJ's RFC determination."); *Rodgers v. Colvin*, No. 16-CV-6739, 2018 WL 446220, at *3 (W.D.N.Y. Jan. 17, 2018) (where consultative examiner did not address relevant functional abilities, the ALJ could not assume there were no limitations); *Jermyn v. Colvin*, No. 13-CV-5093, 2015 WL 1298997, at *20 (E.D.N.Y. Mar. 23, 2015) ("[T]he ALJ was not permitted to construe the silence in the record as to Plaintiff's functional capacity as indicating support for his determination as to Plaintiff's limitations."). Regardless of whether the ALJ's treatment of NP Marrello and Dr. Taylor's opinion was supported by substantial evidence, it was improper for the ALJ to conclude that plaintiff's only limitations were those identified in the consultative examiner's opinion.

Moreover, it is not "clear" from the record that plaintiff could perform the physical exertions required of his RFC for sedentary work as modified by the ALJ. Plaintiff maintained, both at the state agency level and at his administrative hearing, that his ability to walk was significantly limited by his pulmonary issues.  (T. 76–77, 80–81, 283, 288–89).  His primary care provider often observed him to "become short of breath with minimal ambulation and position change." (T. 662, 669, 672, 675, 678, 683, 690).  On August 3, 2015, plaintiff presented to the Emergency Department complaining of chest discomfort and coughing up blood.  (T. 410).  A CT scan of plaintiff's chest showed "emphysematous changes in the lungs with bullous areas."  (T. 400).  Plaintiff was referred to a pulmonologist, who diagnosed plaintiff with COPD and severe bullous emphysematous lung disease, and followed him for treatment of the same.  (T. 370, 380, 477, 490, 502, 619, 645, 651).  On January 25, 2016, plaintiff presented to the Emergency Department with complaints of having a "very difficult time breathing" for several days, and was prescribed medication for COPD exacerbation.  (T. 457, 462).  He returned to the Emergency Department on May 25, 2016, with complaints of respiratory distress, shortness of breath, and cough. (T. 505).

Plaintiff also suffered from some balance issues that were recognized by the ALJ and documented throughout the record.  Upon examination, plaintiff's primary care provider frequently noted that plaintiff was "somewhat off balance" with his eyes closed and arms extended.  (T. 672, 675, 678, 683, 690).  His treating neurologist

recommended that he use a cane for walking.[5]  (T. 593).  Considering the medical evidence of record, this is not the type of case where plaintiff's impairments "were so minimal that the ALJ could permissibly make a common sense judgment as to Plaintiff's [physical RFC]." *Johnson v. Berryhill*, No. 1:16-CV-974, 2018 WL 3688313, at *4 (W.D.N.Y. Aug. 2, 2018); *see also Zayas v. Colvin*, No. 15-CV-6312, 2016 WL 1761959, at *4 (W.D.N.Y. May 2, 2016) ("Depending on the circumstances, like when the medical evidence shows only minor physical impairments, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment").

In sum, instead of developing the record, the ALJ reached her ALJ conclusion based, in part, on the absence of a supporting medical expert opinion as to plaintiff's ability to perform the exertional requirements of sedentary work.  Because the evidence considered by the ALJ failed to discuss, or even identify, plaintiff's capacity for standing, walking, carrying or lifting, the record did support not the ALJ's RFC determination.  *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d at 293; *see also Quinto v. Berryhill*, No. 3:17-CV-24, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) ("[W]here the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual capacities . . . the Commissioner may not make the connection himself.") (citations omitted).  On

---

[5] Although the ALJ presumably accounted for plaintiff's limitations in this regard by including the requirement that he use a cane to ambulate, it is unclear on what evidence she relied in concluding that plaintiff retained the ability to carry small objects with his free hand while utilizing the cane during an eight-hour workday.  (T. 17).

remand, the ALJ should further develop the record by obtaining medical opinion evidence specific to plaintiff's physical limitations, in order to determine whether plaintiff can fulfill the exertional requirements for sedentary work.

## VII.   REMAINING ARGUMENTS

Plaintiff has identified additional reasons why he contends the ALJ's decision was not supported by substantial evidence. Because remand of this matter for further administrative proceedings is necessary, the court declines to reach the majority of these issues,[6] with the exception of plaintiff's argument surrounding the ALJ's efforts to obtain plaintiff's school records.  As discussed below, the court concludes that the ALJ did not err in failing to subpoena testimony concerning the unavailability of such records, and had no further obligation to develop the record in this respect.

Plaintiff was 45 years old at the time he applied for disability benefits.  In preparing the record at the administrative level, both plaintiff and plaintiff's counsel attempted to obtain his over twenty-year-old records from the Rome Central School District ("Rome C.S.D."), as well as the Madison/Oneida BOCES ("BOCES").  (T. 336).  Plaintiff was informed by these entities that the records had been previously destroyed.  (*Id.*).  Subsequently, plaintiff's counsel asked the ALJ to issue a subpoena directing these entities to produce the requested records. (*Id.*).  On July 30, 2018, SSA

---

[6]*See Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-06844, 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").

hearing officer director Mary Jane Pelton submitted a written request for plaintiff's school records.  (T. 351, 353).  Rome C.S.D. responded that "no such student ever registered with us."  (T. 351).  BOCES also responded to the agency's written request, indicating that they did not retain records on students once they left the program.  (T. 352).

At the plaintiff's initial hearing on August 15, 2018, plaintiff's counsel objected to the administrative record as incomplete, arguing that the Rome C.S.D. and BOCES improperly responded to their multiple requests for records.  (T. 64).  Counsel again requested that the ALJ issue subpoenas.  (T. 65).  The ALJ explained that she could not "subpoena records that don't exist," as to BOCES's response that they do not retain records of former students.  (T. 65).  Nevertheless, the ALJ issued a subpoena for Rome C.S.D.'s records that same day.  (T. 203).  On October 5, 2018, Rome C.S.D. responded by producing "the only record [Rome C.S.D.] has in its possession in reference to [the] request for records" – a one-page attendance sheet documenting plaintiff's attendance in or around the year 1986.  (T. 209–10).

On November 28, 2018, plaintiff's counsel submitted a written request to the ALJ, in which he apparently[7] requested that the "chief record-keeping official of the [Rome C.S.D.] and [BOCES] be subpoenaed to personally testify concerning the whereabouts of [plaintiff's] educational records and their efforts to find and produce them."  (T. 217).  The ALJ denied this request.  (*Id.*).  Plaintiff's counsel noted his

---

[7]This quote was taken from the ALJ's November 28, 2018 response denying counsel's request, as it does not appear his written request was included in the administrative record presently before this court.

continued objection to the insufficiency of the record at the supplemental hearing on April 5, 2019. (T. 41). In her April 23, 2019 decision denying disability benefits, the ALJ recounted her efforts to obtain plaintiff's educational records, and her denial of plaintiff's request to subpoena school district personnel for further testimony on the location of plaintiff's academic records. (T. 10).

20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1) requires that the ALJ make "[e]very reasonable effort" to obtain medical evidence, which is defined as an initial request and "one follow-up request to obtain the medical evidence[.]" In this case, the court concludes that the ALJ's efforts to obtain records from Rome C.S.D. and BOCES were inherently reasonable and complied with the requirement to make "every reasonable effort." The plaintiff's contention that Rome C.S.D. and BOCES provided "insufficient" or otherwise contradictory responses to the multiple requests, and subpoena, for records is unavailing, and plaintiff has not advanced any credible reason for why it was unreasonable for the ALJ to accept their response that plaintiff's academic records were no longer available over two decades later.

Moreover, there is nothing to suggest that the alleged incompleteness of the record in this regard prevented the ALJ from assessing plaintiff's limitations. In particular, the record contains the consultative intelligence evaluation performed by Cheryl Loomis, Ph.D. on March 21, 2016, which among other things evaluated plaintiff's cognitive abilities and capacity for maintaining attention. (T. 472–475). The ALJ also evaluated the November 3, 2016 mental RFC of state agency medical consultant Dr. Walker, as well as the October 25, 2016 consultative psychiatric opinion

of Jacqueline Santoro, Ph.D.  (T.  118–20, 579–82).  These opinions further assessed the plaintiff's mental capacity to perform unskilled work.  In the course of her evaluation of the evidence, the ALJ afforded less weight to some of these opinions than others.  Nevertheless, there is no indication that plaintiff's remote educational records contained any evidence that was more relevant than, and not duplicative of, the evidence considered by the ALJ.  Accordingly, the court concludes that the ALJ satisfied her duty to make reasonable efforts to obtain plaintiff's school records, and on these facts was under no additional obligation to subpoena testimony from school personnel.  *See Martinez-Paulino v. Astrue*, No. 11 Civ. 5485, 2012 WL 3564140, at *14 (S.D.N.Y. Aug. 20, 2012) (rejecting plaintiff's argument that the ALJ did not satisfy his duty to develop the record when he made multiple attempts to obtain mental health records, left the record open after the hearing, and ordered a consultative examination because the psychiatric treating records were unavailable.).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.

Dated: May 26, 2022

Andrew T. Baxter
U.S. Magistrate Judge

22